UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ANN McCARTHY,                                      Civil No. 04-4842 (JRT/FLN)

            Plaintiff,

v.                                                **MEMORANDUM OPINION
                                                    AND ORDER**

ESCHELON TELECOM, INC.,

            Defendant.

Adam A. Gillette and James H. Kaster, **NICHOLS KASTER & ANDERSON, PLLP**, 80 South Eighth Street, Suite 4600, Minneapolis, MN 55402, for plaintiff.

Natalie Wyatt-Brown and Thomas E. Marshall, **JACKSON LEWIS LLP**, 150 South Fifth Street, Suite 1450, Minneapolis MN 55402, for defendant.

Plaintiff Ann McCarthy ("McCarthy") sued her former employer, defendant Eschelon Telecom Inc. ("Eschelon"), alleging sex discrimination in violation of Title VII and the Minnesota Human Rights Act ("MHRA"), unlawful termination under the Family and Medical Leave Act ("FMLA"), breach of contract, and unpaid wages under Minn. Stat. § 181.13. Eschelon seeks summary judgment on all of McCarthy's claims. For the following reasons, the Court grants in part and denies in part Eschelon's motion.

## BACKGROUND

Eschelon is a telecommunications provider. McCarthy began working for Eschelon in August 2001 as a sales recruiter. As a sales recruiter, McCarthy was responsible for sourcing and prescreening sales candidates, then identifying candidates

who would likely be a good fit in Eschelon's sales organization and passing information on those candidates to hiring managers in the field, who would then decide whether to interview and hire them.

McCarthy initially reported to Jane Nelson, manager of employee relations, and Steve Wachter ("Wachter"), executive vice president of sales. In summer of 2002, McCarthy's supervisor became Mike Ekegren ("Ekegren"). McCarthy received a performance review on June 3, 2002. The review was based on feedback from the sales managers in the field, and identified some weak points for McCarthy. Although McCarthy was praised for the volume of candidates she recruited, she received negative feedback on the quality of the candidates she recruited. Shortly after her review, McCarthy learned she was pregnant and informed Ekegren that she would need time off. McCarthy alleges that after she told him she was pregnant, Ekegren became unfriendly towards her: he would frequently not answer her phone calls or would hang up on her, and he refused to speak with her or review her work.

On September 19, 2002, McCarthy had another performance review, which stated that she had improved, but that she needed to continue to work on improving the quality of candidates. McCarthy also received a raise at this time.

In January 2003, McCarthy's work responsibilities and her compensation structure were changed, and certain payments, which had been paid on a monthly basis, were now paid quarterly. McCarthy claims that her work responsibilities were unfairly increased, such that she would not be able to successfully meet all of them. Eschelon contends,

however, that the changes were made to better give recruiters, including McCarthy, an incentive to find candidates who would stay at Eschelon longer.

McCarthy went on maternity leave on March 18, 2003. Although McCarthy initially hoped to only take a few weeks off, she ultimately took seven weeks of maternity leave due to complications. Shortly after McCarthy returned to work, Ekegren hired another sales recruiter, Pam Piehl ("Piehl"). Eschelon claims that its business was growing and that an additional recruiter was needed.

McCarthy claims that Piehl was a friend of Ekegren's. McCarthy asserts that Piehl received better treatment from Ekegren than McCarthy did: Piehl received more and better training and support, was given easier recruiting territories, and was permitted to continue using internet job boards for recruiting, while McCarthy was told she could not continue to use internet job boards. McCarthy also claims that she was required to increase the number of recruits, that she was not given training and support, and that Ekegren told McCarthy that she could no longer work from home, even though she had been allowed to work from home two days per week. McCarthy claims that Piehl had no experience as a sales recruiter.

In June 2003, McCarthy received a promotion. The promotion was contingent on McCarthy achieving certain goals within a 90-day timeframe. At the end of the 90 days, McCarthy had met the goals, and the promotion was made effective September 1, 2003. Eschelon claims that although McCarthy's performance improved during this time, her performance deteriorated again after she received the promotion. McCarthy claims that

during this timeframe, Ekegren started transferring McCarthy's job responsibilities to Piehl.

In late October 2003, McCarthy was in an automobile accident. A few weeks later, in November 2003, McCarthy told Ekegren that she needed a few weeks off for neck surgery related to the accident. Three days after she requested the additional leave, on December 7, 2003, Ekegren placed McCarthy on a performance improvement plan ("PIP"). Under the PIP, McCarthy was given 90 days to improve, and would be subject to termination if she failed to improve.

McCarthy claims that she was placed on the PIP in retaliation for requesting FMLA leave. McCarthy also claims that Ekegren pressured her to not take the leave, and also pressured her to work from home. McCarthy also points out that there is a note in her employee file, written by Linda Davis ("Davis"), Eschelon's benefits administrator, and dated January 26, 2004 (three days before McCarthy went on leave for neck surgery). In the note, Davis stated that Ekegren would not approve three weeks off for surgery, and that Ekegren wondered if McCarthy could work from home.

McCarthy went on leave for neck surgery on January 29, 2004. McCarthy initially requested leave from January 29, 2004 through February 26, 2004. While on leave, Ekegren learned that McCarthy had been sending emails and trying to work from home. Ekegren told McCarthy she should not try to work from home.

On February 27, 2004, Davis sent McCarthy a letter telling her that her leave was approved through March 14, 2004. On March 1, 2004, Davis sent McCarthy an application for FMLA leave. In response to the letter, McCarthy spoke with Vicky

Symanietz, in Eschelon's human resources department, who told her to return the paperwork to Eschelon's short-term disability coverage provider, UNUM. On March 4, 2004, McCarthy called UNUM and was told that they had received the paperwork and forwarded it to Eschelon. McCarthy was also told that all she needed to do was to provide UNUM with information related to her leave and that it would send the information to Eschelon.

On March 10, 2004, McCarthy received an email from Davis informing her that they had not received any information from UNUM, but that a report from UNUM would come the following day. McCarthy claims that she called UNUM, who confirmed that Eschelon had received the documentation. On that same day, Davis allegedly informed Ekegren that McCarthy's FMLA leave had been exhausted as of March 4, 2004, and that McCarthy had failed to request an extension.

Eschelon claims that it made the decision to terminate McCarthy on March 10, 2004, however, McCarthy did not learn she been terminated until March 11, 2004, when she tried to log in to Eschelon's computer system from home, but was unable to do so. When she called Eschelon to resolve the problem, she was informed that she had been terminated for job abandonment, because she used up all her FMLA leave and did not request additional leave. McCarthy claims that she never knew or was told that she was about to run out of leave.

# ANALYSIS

## I.    Summary Judgment Standard

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view all of the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.    FMLA

The FMLA allows eligible employees to take up to twelve weeks of unpaid leave for a serious health condition that makes the employee unable to perform the function of her job. 26 U.S.C. § 2612. Courts recognize two types of claims under the FMLA: "interference" claims and retaliatory discrimination claims. McCarthy asserts both types of claims.

### A.    Interference

The FMLA makes it unlawful for an employer to "interfere" with employees' rights under the Act. 29 U.S.C. § 2615(a)(1). McCarthy claims that Eschelon unlawfully interfered with her FMLA rights by telling her she could remain on leave through

March 14, 2001, and then terminating her for failing to return to work before that date. While the FMLA does not impose any specific requirements for the type or timing of notice to be given an employee upon the designation of FMLA leave, the Department of Labor's regulations address this gap. *See* 29 C.F.R. § 825.208; *Smith v. Blue Dot Servs. Co.*, 283 F. Supp. 2d 1200, 1204 (D. Kan. 2003). The regulations require "employers to inform workers about the relationship between the FMLA and leave granted under the company plans." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 87 (2002). Notably, the regulations give the employer the responsibility to inform employees when an absence will be treated as FMLA leave. *See* 29 C.F.R. § 825.208(a). This disclosure must be in writing, must include details about the employee's rights and responsibilities, and must occur "within a reasonable time after notice of the need for leave is given by the employee-within one or two business days if feasible." *See* 29 C.F.R. § 825.301(c).

When a plaintiff bases an FMLA interference claim on an employer's failure to comply with the notice requirements, summary judgment is not appropriate if there are genuine issues of material fact regarding whether the plaintiff was prejudiced as a result of the employer's failure to provide notice. *See*, *e.g.*, *Mendoza v. Micro Elecs., Inc.*, 2005 WL 331585, at *5 (N.D. Ill. Feb. 8, 2005); *Viereck v. City of Gloucester City*, 961 F. Supp. 703, 709 (D.N.J. 1997); *see also Rodgers v. City of Des Moines*, 2006 WL 167899 (8th Cir. Jan. 25, 2006) ("The FMLA, however, provides no relief *unless the employee has been prejudiced* by the violation.") (emphasis added).[1] In *Mendoza*, the

---

[1] *Cf. Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 90-91 (2002). The Supreme Court in *Ragsdale* invalidated a separate regulatory provision, 29 C.F.R. § 825.700(a), because

(Footnote continued on next page.)

plaintiff requested FMLA leave in connection with her pregnancy.  She was initially, and as it turned out, incorrectly informed that her FMLA leave would be exhausted as of December 31, 2001.  The plaintiff did not return to work by December 31, 2001, and was terminated.  Shortly thereafter, the employer discovered that it had incorrectly calculated the plaintiff's FMLA leave, and that the plaintiff's FMLA leave should have run through January 5, 2002.  The plaintiff claimed that she was prejudiced by her employer's failure to properly provide her notice, because she would have returned to work by January 6, 2002, if she had known that her FMLA leave expired on January 5, 2002.  Because there was a genuine issue of material fact whether the plaintiff would have been able to return to work when her FMLA leave was exhausted, the court denied the employer's motion for summary judgment.  *Mendoza*, 2005 WL 331585, at \*5.

The court in *Viereck* also denied the employer's motion for summary judgment.  *Viereck*, 961 F. Supp. at 709.  In that case, the employer did not give the plaintiff notice that it would designate leave as FMLA leave at the time she requested the leave, and then retroactively designated her requested leave as FMLA leave two months later.  The

---

(Footnote continued.)

that provision would have categorically entitled an employee to backpay and reinstatement for an employer's failure to comply with the notice requirements, even where the employee could not show that he or she was prejudiced by the employer's failure to comply with the notice requirements.  *Ragsdale* did not invalidate the regulations at issue here, *e.g.*, 29 C.F.R. § 825.08, requiring the employer to give the employee notice.  Further, *Ragsdale* expressly left open the possibility that an employee could recover for notice violations where the violations resulted in prejudice to the employee.  *See Ragsdale*, 535 U.S. at 90-91.  Indeed, were it otherwise, unscrupulous employers would have a perverse incentive to recklessly miscalculate, or even affirmatively misrepresent, the amount of FMLA leave an employee had available, such that the employer could later terminate the employee for failing to return to work while the employee believed he or she was still on FMLA leave.

employer later terminated the plaintiff while she was still on leave. In finding that genuine issues of material fact precluded summary judgment, the court noted that the plaintiff would only have needed to return to work two days earlier than she had planned, and therefore, whether she could have or would have returned to work on that date was "a factual inquiry on which the record is not free from doubt." *Id.*[2].

Viewing the facts in the light most favorable to McCarthy, as the Court must on Eschelon's motion for summary judgment, the Court finds that there are genuine issues of material fact whether McCarthy could have or would have returned to work on March 4, 2001, if she had known her FMLA leave was exhausted by that date. First, McCarthy claims that her physician initially told her that the recovery period for her surgery could be as little as three days, and that she shared that information with Ekegren and Davis. Further, McCarthy claims that she requested, and Eschelon approved, her taking leave through March 14, and that she relied on that approval in continuing to stay on leave after March 4. Moreover, it is undisputed that McCarthy had some flexibility in scheduling her neck surgery (the reason for her second FMLA leave). Here, as in *Viereck*, it is "pure speculation" whether McCarthy could have scheduled her surgery, or doctor appointments, in such a way to insure that she would have been able to return to work on March 4. *Viereck*, 961 F. Supp. at 709. Further, McCarthy would only have needed to return to work a short time earlier than she had planned in order to save her job, similar to

---

[2] For example, the court in *Viereck* noted that, "if it meant saving her job, plaintiff probably could have appeared for work two days earlier than her doctors recommended, she could have scheduled her last doctor's appointment sooner, or she could have convinced her doctors to permit her to return a couple of days earlier." *Viereck*, 961 F. Supp. at 709.

the plaintiffs in *Mendoza* and *Viereck*. Accordingly, as in *Mendoza* and *Viereck*, the "record is not free from doubt" that McCarthy could not or would not have returned to work before her FMLA leave was exhausted.

Since there are genuine issues of fact regarding whether McCarthy could have retuned to work by March 4 if Eschelon had informed her that her FMLA leave would be exhausted as of that day, summary judgment on McCarthy's FMLA interference claim is inappropriate.

### B.   Retaliation

The FMLA also prohibits employers from discriminating against employees for asserting rights under the Act. 29 U.S.C. § 2615(a)(2). This prohibition necessarily includes consideration of an employee's use of FMLA leave as a negative factor in an employment action. *Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2002). The *McDonnell Douglas* burden-shifting framework applies to FMLA retaliation claims. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). First, the plaintiff must establish a prima facie case of discrimination. *Id.* The burden then shifts to the defendant to establish a legitimate, nondiscriminatory reason for the alleged discriminatory action. *Id.* The burden then shifts back to the plaintiff to show that the legitimate reasons asserted by the defendant are merely a pretext for discrimination. *Id.*

To establish a prima facie case of FMLA retaliation, McCarthy must show that she engaged in activity protected under the Act, that she suffered an adverse employment action by the employer, and that there is a causal connection between the two. *Id.* It is undisputed that McCarthy engaged in the protected activity of taking FMLA leave, and

that she suffered an adverse employment action, as she was placed on a PIP and ultimately terminated. In addition, McCarthy alleges that there is a causal connection between the two based on the close temporal proximity between her first request for leave and Ekegren's change in attitude towards her, as well as the close temporal proximity between her second request for leave and her being placed on a PIP. McCarthy also contends that a causal connection may be inferred based on the fact that she was initially told she could stay on leave until March 14, but was later terminated on March 10, when her FMLA leave was actually exhausted. The Court finds that McCarthy has satisfied her burden to set forth a prima facie case, and the burden shifts to Eschelon.

The Court finds that Eschelon has set forth a legitimate, nondiscriminatory reason for its treatment of McCarthy. Eschelon contends that although McCarthy did receive some positive feedback and raises while working at Eschelon, her performance continued to fluctuate during her employment, and that she was continually advised to improve in certain areas, such as the quality of the employees she recruited.

Because Eschelon has set proffered a legitimate, nondiscriminatory reason for its treatment, the burden shifts back to McCarthy to show that the asserted reason is a pretext for retaliation. The Court finds, for purposes of analyzing defendant's motion for summary judgment, that McCarthy has alleged sufficient facts showing that Eschelon's articulated reason for her termination is a pretext for retaliation. Notably, McCarthy has alleged that Eschelon initially told her that she could remain on FMLA leave until March 14. In addition, McCarthy has set forth evidence showing that she discussed her leave with personnel at Eschelon and at UNUM, Eschelon's short-term disability insurance

provider, and that no one told her that her leave would be exhausted as of March 4. Rather, McCarthy was led to believe that she had complied with the requisite procedures and submitted the proper documentation supporting her leave request. Based on the circumstances surrounding Eschelon's apparent change in position regarding McCarthy's leave, McCarthy argues, and the Court agrees, that a reasonable factfinder could determine that Eschelon's asserted reason for her termination was not credible, and was a pretext for retaliation. Accordingly, summary judgment is inappropriate on this claim.

### III.   SEX DISCRIMINATION UNDER TITLE VII AND THE MHRA

Title VII and the MHRA both make it an unlawful employment practice for an employer, on the basis of sex, to discharge an employee, or discriminate against a person with respect to compensation, terms, conditions, or privileges of employment. 42 U.S.C. § 2000e-2(a)(1); Minn. Stat. § 363A.08, subd. 2. Both statutes also similarly define "sex" to include pregnancy, childbirth, or related medical conditions. 42 U.S.C. § 2000e(k); *see* Minn. Stat. § 363A.03, subd. 42. In this case, McCarthy's sex discrimination claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *Holthaus v. Compton & Sons, Inc.*, 514 F.2d 651, 652 (8th Cir. 1975) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[3] First, the plaintiff must establish a prima facie case of discrimination. *Bergstrom-Ek*, 153 F.3d at 857. The burden then shifts to the defendant to establish a legitimate, nondiscriminatory reason for the alleged

---

[3] The same standard is used to analyze both Title VII and MHRA claims, and therefore, the above stated analysis applies to both claims. *See Bergstrom-Ek v. Best Oil Co.*, 153 F.3d 851, 857 (8th Cir. 1998).

discriminatory action. *Id.* The burden shifts back to the plaintiff to show that the legitimate reasons asserted by the defendant are merely a pretext for discrimination. *Id.* at 857-58.

In order to establish a prima facie case of pregnancy discrimination, McCarthy must show that: (1) she was a member of a protected class, (2) she was qualified for her position, and (3) she suffered an adverse employment action under circumstances giving rise to an inference of discrimination. *Id.* at 857. It is undisputed that McCarthy was a member of a protected class, in that she was female and became pregnant while working at Eschelon. It is also undisputed that she suffered an adverse employment action, as she was placed on a PIP and ultimately terminated. McCarthy also alleges that she was qualified for her position, as evidenced by the positive feedback and raises she received while employed at Eschelon. Finally, McCarthy alleges that the adverse employment action occurred under circumstances giving rise to an inference of discrimination, because Piehl, a similarly-situated female employee who did not have children or become pregnant while working at Eschelon, did not suffer an adverse employment action. Therefore, the Court finds that McCarthy has satisfied her burden to set forth a prima facie case, and the burden shifts to Eschelon to set forth a legitimate, nondiscriminatory reason for its treatment of McCarthy.

The Court finds that Eschelon has satisfied that burden. First, as discussed above, Eschelon contends that although McCarthy did receive some positive feedback and raises while working at Eschelon, her performance continued to fluctuate during her employment, and that she was continually advised to improve in certain areas, such as the

quality of the employees she recruited.  Further, Eschelon claims that, to the extent that Piehl was treated differently from McCarthy, the difference in treatment was based on the fact that Piehl was a new employee, whereas McCarthy had been working at Eschelon for a couple years.  Eschelon adds that part of McCarthy's job, as the senior employee, was to help train Piehl.

Therefore, the burden shifts back to McCarthy to show that the asserted reason is a pretext for discrimination.  The Court finds that McCarthy has failed to allege facts showing that Eschelon's articulated reason for her termination is pretextual.  McCarthy does not dispute that Piehl, whom McCarthy identifies as a similarly-situated employee, is not in fact comparable to McCarthy.  Piehl was a new employee, and her job responsibilities and compensation were based on her lack of seniority.  In sum, McCarthy's assertions that she felt that she was discriminated against because of pregnancy are conclusory statements, unsupported by specific factual allegations.[4]  Therefore, the Court grants Eschelon's motion for summary judgment on McCarthy's pregnancy discrimination claims.

## IV.   MINN. STAT. § 181.13 AND BREACH OF CONTRACT

Under Minn. Stat. § 181.13, "[w]hen an employer employing labor within this state discharges an employee, the wages or commissions actually earned and unpaid at the time of the discharge are immediately due and payable upon the demand of the

---

[4] The parties dispute the legal significance of certain remarks allegedly made by Eschelon employees.  Regardless of whether the statements are admissible for purposes of ruling on a motion for summary judgment, the Court concludes that the alleged remarks, without more, do not provide sufficiently probative evidence of discriminatory animus.

employee." McCarthy claims that Eschelon has failed to pay her commissions to which she is entitled, in breach of contract and in violation of Minn. Stat. § 181.13. Eschelon seeks summary judgment on her unpaid commissions claims.

In a motion for summary judgment, the moving party bears the initial burden of showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Eschelon has not set forth specific factual evidence showing that it has paid McCarthy all the commissions to which she is entitled. Therefore, the Court finds that Eschelon has failed to meet that burden, and denies its motion for summary judgment on McCarthy's breach of contract and Minn. Stat. § 181.13 claims.

This case will be placed on the Court's next available trial calendar.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that Eschelon's Motion for Summary Judgment [Docket No. 25] is **GRANTED in part** and **DENIED in part** as follows:

1. Eschelon's motion for summary judgment on McCarthy's Title VII and MHRA claims (Counts I and II) is **GRANTED**, and these claims are **DISMISSED WITH PREJUDICE**;

2. Eschelon's motion for summary judgment in all other respects is **DENIED**.

DATED:   August 18, 2006　　　　　　　　　　s/ John R. Tunheim
at Minneapolis, Minnesota.　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　United States District Judge